# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRYAN McCLURKIN, #B13440, ) <br> ) <br>         **Plaintiff,** ) <br> ) <br>   vs. ) <br> ) <br> JOHN BALDWIN, ) <br> S. A. GODINEZ, ) <br> JACQUELINE LASHBROOK, ) <br> KIMBERLY BUTLER, ) <br> GAIL WALLS, ) <br> WEXFORD MEDICAL SERVICES, INC., ) <br> JOHN/JANE DOE, ) <br> MIKE NELSON, ) <br> CHARLOTTE MIGET, ) <br> DR. FUENTES, ) <br> MARTHA M. OAKLEY, ) <br> DR. TINDALL, ) <br> DR. HA, ) <br> B. RUPPORT, and ) <br> M. MOLDENHAUER, ) <br> ) <br>         **Defendants.** ) | Case No. 17-cv-01228-MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

This matter is now before the Court for consideration of the First Amended Complaint filed by Plaintiff Bryan McClurkin on November 30, 2017. (Doc. 11). Plaintiff is currently incarcerated in Stateville Correctional Center ("Stateville"). He brings this action pursuant to 42 U.S.C. § 1983 against current and former employees of Menard Correctional Center ("Menard") and the Illinois Department of Corrections ("IDOC") who allegedly denied him medical care for injuries he sustained when his chair collapsed during a "shakedown" at Menard on or around April 8, 2014. (Doc. 11, pp. 11-20). Plaintiff seeks declaratory judgment and monetary damages against the defendants. (Doc. 11, pp. 20-21).

1

The First Amended Complaint is now subject to review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id*. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). Plaintiff's First Amended Complaint survives screening under this standard.

### First Amended Complaint

Plaintiff alleges that he was badly injured during a shakedown that was conducted by Menard's Orange Crush Tactical Team on or around April 8, 2014. (Doc. 11, pp. 11-20). At the time, he was cuffed behind his back and seated in a chair in the prison's auditorium. (Doc. 11, p. 11). The chair suddenly collapsed, and Plaintiff fell to the floor. *Id*. As he fell, Plaintiff's lower

neck and shoulder hit a metal brace that supported several adjoined chairs. *Id*. He landed on his cuffed wrists. *Id*. Plaintiff immediately felt intense pain in his wrists and neck. *Id*.

Officer Winters helped Plaintiff up and asked him if he needed medical treatment. (Doc. 11, p. 11). Plaintiff stated that he did. *Id*. The officer escorted Plaintiff to see Mike Nelson, a medical technician who was stationed in the area. *Id*. Despite the emergency nature of Plaintiff's injuries, Nelson took his blood pressure but explained that there was nothing else he could do during the ongoing tactical operation. (Doc. 11, p. 12). He told Plaintiff that someone would "follow up" with him later, but no one ever did. *Id*.

Plaintiff filed an inmate grievance two days later. (Doc. 11, p. 12). He sent it directly to the Office of Inmate Issues on April 10, 2014. *Id*. Hearing nothing, he filed an emergency grievance with Warden Kimberly Butler on or around April 17, 2014. *Id*. He complained of intense pain and numbness. *Id*. Warden Butler agreed that the grievance presented an emergency. *Id*. Even so, a grievance officer later determined that the grievance was "moot," and Butler concurred with the decision. *Id*. Plaintiff blames this decision on an unnamed nurse who incorrectly stated that Plaintiff refused medical attention and "chose to go to yard" on a day that yard was cancelled. (Doc. 11, p. 13).

Plaintiff saw Doctor Fuentes on April 22, 2014. (Doc. 11, pp. 13, 25). He was given naproxen for pain at the appointment, but it was ineffective. *Id*. On May 11, 2014, Nurse Martha Oakley noted Plaintiff's complaints of persistent neck pain and numbness in his fingers and hand, but she allegedly "sat idly by as ibuprofen was prescribed again [and] again with full knowledge it didn't work." (Doc. 11, pp. 4, 13).

Plaintiff continued to request medical treatment for his injuries, but his appointments were "constantly being cancelled." (Doc. 11, p. 13). When he was seen, Plaintiff regularly

complained that his pain was "constant" and "spreading," and his treatment with naproxen and ibuprofen was ineffective. *Id*. His medical records reflected the onset of additional symptoms, including a "gait disturbance, limitation of movement[,] and distress and/or pain with movement." (Doc. 11, pp. 13-14). However, no changes were made to his treatment plan. *Id*.

On June 20, 2014, Nurse Practitioner M. Moldenhauer examined Plaintiff after he complained of "spreading pain." (Doc. 11, p. 14). Although Moldenhauer charged Plaintiff a $5.00 copayment for services, "no action" was taken to treat him. *Id*. An x-ray was taken of Plaintiff's back and spine on June 24, 2014, and Nurse Rupport noted that the x-ray was "done." (Doc. 11, p. 30). It showed "'multi-level' degeneration" that was "most prominent in [his] mid[-] to lower[-] thoracic region," according to Doctor Ha's interpretation of the test results. (Doc. 11, p. 14). Despite these results, Doctor Ha and Nurse Rupport made no recommendations for treatment, and Moldenhauer reduced Plaintiff's prescription for pain relievers from 400 milligrams of ibuprofen to 325 milligrams of Tylenol on July 3, 2014. (Doc. 11, pp. 6, 14, 30).

Plaintiff filed another grievance on September 22, 2014. (Doc. 11, p. 14). He complained of "constant neck [and] back pain, a numb finger on his right hand[,] and an entire left arm that [wa]s numb." *Id*. Plaintiff explained that his past treatment with pain relievers was ineffective, and he requested an MRI to determine the cause of his increasing pain and numbness. *Id*. Nursing Supervisor Charlotte Miget noted Plaintiff's complaints and his request for an MRI on October 10, 2014, but she took no action on the request. (Doc. 11, p. 15). The grievance officer declared the issue "moot," and Warden Butler concurred. *Id*. Plaintiff appealed, and the Administrative Review Board ("ARB") and IDOC Director Salvadore Godinez denied the appeal. *Id*. In a "desperate attempt to allev[iate] the pain," Plaintiff purchased additional ibuprofen from the prison commissary, but the results were the same. (Doc. 11, pp.

15-16). In the meantime, Doctor Trost continued to prescribe Plaintiff naproxen. (Doc. 11, pp. 16, 40).

As of March 5, 2015, Plaintiff's medical records indicate that his pain was "chronic," "constant," and "stabbing." (Doc. 1, p. 16). The records also indicate that the "ibuprofen [was] not effective." *Id*. On that date, Plaintiff rated his pain level as an "8" out of "10," with "10" being the worst pain. *Id*. Even so, he was given ibuprofen. (Doc. 1, pp. 16, 41-42).

Plaintiff received a second x-ray of his spine on March 15, 2015. (Doc. 11, pp. 16, 43). It revealed "degenerative changes with mild to moderate multilevel hypertrophic spurring" but "no fracture or acute bony abnormality." *Id*. The x-rays resulted in no modification to Plaintiff's treatment plan. *Id*. On June 16, 2015, he was given more naproxen. (Doc. 11, pp. 16, 44).

On July 19, 2015, Plaintiff complained of swelling in his left knee and pain when active and at rest. (Doc. 11, pp. 16, 45). He was again given ibuprofen. *Id*. The same month, Plaintiff lost the ability to walk and had to be carried up a flight of stairs to be seen by medical staff. (Doc. 11, p. 17). Plaintiff complained of pain in his left hip, leg, and foot. *Id*. He rated the pain as a "10" out of "10" and stated that it caused him to lose sleep. *Id*. Staff noted other signs of pain, such as facial grimacing and distress. *Id*.

Plaintiff could no longer stand to urinate. (Doc. 11, p. 17). He was "mocked, teased[,] and humiliated" by officers and inmates when he urinated into the toilet while crouched on his knees. *Id*. During this same time period, Plaintiff also slept on the floor. *Id*.

On August 2, 2016, he was taken in a wheelchair to the emergency room. (Doc. 11, pp. 17-18). At that point in time, Plaintiff had been unable to walk for two weeks. (Doc. 11, p. 18). He could not touch his toes or raise his leg. *Id*. His left leg was noticeably "smaller in size." (Doc. 11, pp. 18, 49). For the first time, Plaintiff was given "some relief" when Doctor Tindall

issued Plaintiff a permit for a medical lay-in and prescribed him Tramadol and Robaxin for pain. (Doc. 11, pp. 4, 18). However, the two prescriptions expired a week later, and his symptoms immediately returned. *Id*. When they did, he was given no additional Tramadol or Robaxin. *Id*.

A third set of x-rays taken on August 3, 2016, revealed "disc space narrowings" when compared to the x-rays taken on June 24, 2014. (Doc. 11, pp. 18, 50). Doctor Ha noted that the "finding appear[ed] slightly progressed over the interval" but recommended no change in Plaintiff's treatment. (Doc. 11, pp. 5, 18).

On October 17, 2016, Plaintiff filed a request for an MRI and a medical transfer. (Doc. 11, pp. 19, 51). He finally received an MRI almost seven months later on May 12, 2017. (Doc. 11, p. 19). He was subsequently advised that the only treatment option was surgery, but it was not recommended because of a risk that it would actually increase Plaintiff's pain. *Id*. Plaintiff complains of an inability to stand for long periods of time and of "constant discomfort." *Id*. Despite his unresolved medical issues, Acting IDOC Director Baldwin determined that his grievance dated October 2016 was moot on May 17, 2017. (Doc. 11, pp. 7, 18, 51). Gall Walls, the health care unit administrator, also reviewed Plaintiff's grievances for more than three years and took no action to ensure that he received treatment, despite his well-documented complaints that naproxen and ibuprofen were ineffective. (Doc. 11, p. 9).

Plaintiff maintains that the defendants denied him adequate medical care at Menard for the injuries he sustained on April 8, 2014. (Doc. 11, pp. 11-20). They frequently cancelled his medical appointments, including appointments scheduled for April 2, 2014, May 15, 2014, May 20, 2014, and May 23, 2014, January 27, 2015, October 15, 2016, October 18, 2016, October 25, 2016, November 3, 2016, November 6, 2016, November 8, 2016, and November 10, 2016. (Doc. 11, pp. 13, 19, 27). Plaintiff was consistently given naproxen and ibuprofen, despite being

ineffective. (Doc. 11, pp. 11-20). Although he received numerous x-rays and an MRI, he claims that the information gleaned from these tests was never used to treat him. *Id*. Plaintiff eventually transferred from Menard to Stateville, but says that his transfer was based on his good conduct and not on his request for a medical transfer. (Doc. 11, p. 20).

**Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in the First Amended Complaint into the following enumerated counts:

> **Count 1** - Eighth Amendment deliberate indifference claim against Defendants for denying Plaintiff adequate medical treatment at Menard for the injuries he sustained when he fell from his chair during the Orange Crush Tactical Team's shakedown at the prison on April 8, 2014.
>
> **Count 2 -** First and/or Fourteenth Amendment claim against Defendants for mishandling Plaintiff's grievances.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits. **Any other claims in the First Amended Complaint that are not identified above are inadequately pled under *Twombly* and are considered dismissed without prejudice from this action.**

As a preliminary matter, the Court has considered whether the claims against the defendants are properly joined in a single action. *See* FED. R. CIV. P. 18-20. The allegations focus on an Eighth Amendment claim against all of the defendants for their failure to treat the injuries Plaintiff suffered when he fell from a chair at Menard on April 8, 2014, as well as a claim under the First and/or Fourteenth Amendment for mishandling his grievances regarding the

7

same. (Doc. 11, pp. 11-20). Because the claims against each defendant involve questions of law and/or fact that are common to the defendants and the right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences, the Court finds that the defendants and claims are properly joined in this action. FED. R. CIV. P. 18, 20. However, this issue is subject to reconsideration as the case proceeds. *Plaintiff is warned that the Court may exercise its discretion and dismiss or sever improperly joined parties or claims at any time the Court deems it appropriate to do so.* FED. R. CIV. P. 21.

## Count 1

To state a claim for the denial of medical care under the Eighth Amendment, a plaintiff must satisfy two requirements. Plaintiff must show that: (1) he suffered from a sufficiently serious medical condition (*i.e.*, an objective standard); and (2) the defendants responded with deliberate indifference to his medical condition (*i.e.*, a subjective standard). *Hotchkiss v. David*, -- F. App'x --, 2017 WL 4964714 (7th Cir. Nov. 1, 2017) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 774 (7th Cir. 2015)). The allegations in the First Amended Complaint satisfy both of these requirements.

Chronic pain is often deemed to be sufficiently serious to support an Eighth Amendment claim. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681-82 (7th Cir. 2012) (prisoner stated Eighth Amendment claim when he alleged that the defendants ignored "severe ongoing pain from a medical condition"). In the First Amended Complaint, Plaintiff describes more than three years of pain in his wrists, neck, back, and legs, following his fall from a chair in the prison's auditorium on April 8, 2014. (Doc. 11, pp. 11-20). The pain spread and became worse over time. *Id*. Plaintiff eventually suffered from gait disturbances and pain with activity and at rest. *Id*. For screening purposes, the objective component of Plaintiff's Eighth

Amendment claim is satisfied.

To satisfy the subjective component of this claim, the allegations must suggest that each defendant responded to Plaintiff's serious medical condition with deliberate indifference. When analyzing claims of deliberate indifference against medical providers, a plaintiff is not required to show that he was totally ignored; a medical provider who "chooses easier and less efficacious treatment without exercising professional judgment" may be found deliberately indifferent to a prisoner's medical needs. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 n. 10 (1976) (internal quotation marks omitted). In other words, prison officials cannot avoid liability by "shuttling sick or injured inmates to perfunctory medical appointments wherein no meaningful treatment is dispensed," even when they do provide some "'immediate and ongoing attention.'" *Perez*, 792 F.3d at 777 (citation omitted). The allegations suggest that the following medical providers may have been deliberately indifferent under this standard: Gail Walls, Mike Nelson, Charlotte Miget, Martha Oakley, Doctor Tindall, Doctor Fuentes, Doctor Ha, Nurse Rupport, and M. Moldenhauer.[1]

When analyzing claims of deliberate indifference against non-medical, supervisory officials, such as IDOC Director Baldwin, former IDOC Director Godinez, Warden Lashbrook, and former Warden Butler, Plaintiff cannot rely on a theory of *respondeat superior* liability. *Perez*, 792 F.3d at 781. It is well established that "a government official is only liable for his or her own misconduct." *Id.* (quotation and citation omitted). In order to recover monetary relief against a prison official who is acting in a supervisory role, a § 1983 plaintiff must allege that the

---

[1] The First Amended Complaint supports no claim against Moldenhauer for charging Plaintiff a copayment for medical services. Such a claim is a matter of state law and is not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Therefore, should Plaintiff wish to pursue this claim, he must do so in state court.

official, "through his or her own conduct, . . . violated the Constitution." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009)). Deliberate indifference is shown when a prison official realizes that a prisoner faces a substantial risk of serious harm but disregards the risk. *Perez*, 792 F.3d at 781 (citing *Farmer*, 511 U.S. at 837). An official may also be found deliberately indifferent where the official "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). The Court will allow Count 1 to proceed against the following high-ranking grievance officers under this standard: John Baldwin, S.A. Godinez, and Kimberly Butler. Each of these defendants reviewed and considered grievances and appeals from Plaintiff, in which he allegedly made it clear that treatment with naproxen and ibuprofen was ineffective but did not intervene to ensure that appropriate treatment was provided.

Count 1 shall be dismissed against all other defendants without prejudice at this time, including Jacqueline Lashbrook, Wexford Medical Services, Inc. and John/Jane Doe. To begin with, Warden Lashbrook is named as a defendant simply because she is the "Warden at Menard." (Doc. 11, p. 8). Plaintiff cannot proceed against the warden based only on her supervisory role at the prison. *Respondeat superior* liability is not recognized in § 1983 actions. *Perez*, 792 F.3d at 781. No other allegations in the statement of claim or exhibits clarify this warden's role in the matter. Therefore, Count 1 shall be dismissed without prejudice against Warden Lashbrook at this time.

Count 1 cannot proceed against Wexford either. Plaintiff names this defendant because Wexford is the "sole provider of medical services for inmates in Illinois, including Menard." (Doc. 11, p. 9). But in this circuit, "a private corporation cannot be held liable under § 1983

unless it maintained an unconstitutional policy or custom" that resulted in the deprivation of Plaintiff's constitutional rights. *Perez*, 792 F.3d at 780 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). Plaintiff points to no policy or custom espoused by Wexford that resulted in the denial of medical care in this case. Count 1 shall be dismissed against Wexford without prejudice for failure to state a claim upon which relief may be granted.

Count 1 shall also be dismissed against the unknown defendants who are identified in the case caption as "John/Jane Does." (Doc. 11, p. 1). Plaintiff does not mention "John/Jane Does" in the statement of his claim. (Doc. 11, pp. 11-20). It is not the Court's place to decide who, if anyone, alluded to in the statement of claim should be considered a "John/Jane Doe" defendant in this action. Plaintiff refers to numerous known and unknown individuals who are not named as defendants in the case caption (*e.g.*, grievance officers (Doc. 11, pp. 12, 15), Officer Winters (Doc. 11, p. 11), Doctor Trost (Doc. 11, pp. 16, 40), unnamed nurse (Doc. 11, p. 13), unnamed doctor (*Id.*), and officers (Doc. 11, p. 17)). Absent a clear indication that he intended to bring this lawsuit against these individuals, the Court will not allow Count 1 to proceed against them. Count 1 shall be dismissed without prejudice against "John/Jane Does" at this time. Likewise, any claims against non-parties shall be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

**Count 2**

Plaintiff refers to claims under the First and/or Fourteenth Amendment without explaining why. (Doc. 11, p. 20). The Court construes this reference as a claim for mishandling Plaintiff's grievances, by routinely declaring them moot or denying them. However, the mishandling of grievances gives rise to no claim under the First and/or Fourteenth Amendment.

Although prison officials may not retaliate against an inmate for exercising his First Amendment rights by filing grievances, Plaintiff does not claim that anyone retaliated against him for doing so. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"). Further, prison grievance procedures are not constitutionally mandated and thus do not implicate the Fourteenth Amendment Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Count 2 shall therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against Defendants **JACQUELINE LASHBROOK, WEXFORD MEDICAL SERVICES, INC.,** and **JOHN/JANE DOES.**

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted against any of the defendants.

**IT IS ORDERED** that **COUNT 1** in Plaintiff's First Amended Complaint (Doc. 11) survives screening and is subject to further review against Defendants **JOHN BALDWIN, S.A. GODINEZ, KIMBERLY BUTLER, GAIL WALLS, MIKE NELSON, CHARLOTTE MIGET, MARTHA M. OAKLEY, DR. TINDALL, DR. FUENTES, DR. HA, B. RUPPORT,** and **M. MOLDENHAUER**.

With regard to **COUNT 1**, the Clerk of Court shall prepare for Defendants **JOHN BALDWIN, S.A. GODINEZ, KIMBERLY BUTLER, GAIL WALLS, MIKE NELSON, CHARLOTTE MIGET, MARTHA M. OAKLEY, DR. FUENTES, DR. TINDALL, DR. HA, B. RUPPORT,** and **M. MOLDENHAUER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 11), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to any Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c),

13

*if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 10, 2018**

                                              s/ MICHAEL J. REAGAN
                                              **Chief Judge**
                                              **United States District Court**